## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRETT KIMBERLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01047-TWP-MJD |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT OF | ) | |
| WASHINGTON TOWNSHIP SCHOOLS, | ) | |
| BOARD OF METROPOLITAN SCHOOL | ) | |
| DISTRICT OF WASHINGTON TOWNSHIP | ) | |
| SCHOOLS, | ) | |
| DR. NIKKI WOODSON Superintendent, in her | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S PENDING MOTIONS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(5), and 12(b)(6) by Defendants the Metropolitan School District of Washington Township (the "School District"), the Board of the School District (the "School Board"), and the Superintendent, Dr. Nikki Woodson ("Dr. Woodson") (collectively, "Defendants") (Dkt. 20). Also before the Court are *pro se* Plaintiff Brett Kimberlin's ("Kimberlin") Motion to Disqualify (Dkt. 22), Motion to Order Alternative Dispute Resolution ("ADR") (Dkt. 23), Motion to Allow Alternative Service (Dkt. 29), and Motion to Rule on Motion for ADR (Dkt. 37).[1] Kimberlin initiated this action under Title IX of the Education Amendments of 1972 ("Title IX"), and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, after he reported to Defendants that one of the School's teachers had sexually abused him in 1968. For the following

---

[1] Also pending is Mr. Kimberlin's Objection to the Magistrate Judge's February 4, 2026 Order on Plaintiff's Motion to Seal (Dkt. 40). Mr. Kimberlin's Objection will be resolved in a separate order in due course.

reasons, the Court **grants in part** and **denies in part** Defendants' Motion to Dismiss, **grants Plaintiff leave** to amend; **denies as premature** the Motion to Disqualify, **grants** the Motion to Rule on Motion for ADR only to the extent that the Court **denies as premature** the Motion to Order ADR, and **denies as moot** the Motion to Allow Alternative Service.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Kimberlin as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

### A. Factual Background

Kimberlin was born in Indiana, and he attended Washington Township Schools in Indianapolis through high school (Dkt. 1 ¶ 1). In 1968, when he was a fourteen-year-old student at Westlane Junior High School, teacher Tharrell Davis ("Davis") "took an unusual interest" in Kimberlin. Over the next several months, Davis repeatedly sexually assaulted Kimberlin in Davis's home and elsewhere. *Id.* The abuse caused Kimberlin physical injuries at the time and has caused many other problems in the decades since. *Id.* ¶ 5.

Another boy named "Tommy" was often present during the assaults and was also assaulted by Davis. *Id.* Kimberlin offered to have his parents help Tommy get away from Davis. Tommy told Davis about this offer, which led Davis to admit the abuse to Kimberlin's mother and agree not to have further contact with Kimberlin. *Id.* ¶ 3. Kimberlin's mother asked a friend to report Davis to the School District and Indiana State Police; the Complaint does not allege whether those reports were made. The next year, Davis left the School District. "Plaintiff believes that he was quietly forced out of his job because of his sexual abuse of Plaintiff and others." *Id.* ¶ 4.

2

In December 2023, shortly before her death, Kimberlin's mother told him that Davis had admitted to the sexual assaults. This caused "a flood of repressed memories, nightmares, anxiety, and post traumatic stresses." *Id.* ¶ 6. In June 2024, Kimberlin wrote a letter to Dr. Woodson about the abuse, "demand[ing] accountability and compensation." *Id.* ¶ 7. At the time, Kimberlin did not know Davis's first name, but he told Dr. Woodson that Davis was a science teacher in 1968 at Westlane and had been in the military. Kimberlin "urged [Dr. Woodson] and [the School District] to review its records and conduct their own investigation." *Id.* ¶ 7.

A few weeks later, in July 2024, outside counsel for the School District (and defense counsel in this case), Jonathan Mayes ("Mayes"), responded, stating that the School District "had turned the matter over to law enforcement for investigation, and [the School District] would respond after law enforcement responded. *Id.* ¶ 8. Law enforcement never responded to the School District, so the School District never responded to Kimberlin.

In January 2025, Kimberlin sent another letter to Mayes "stating that there was no reason to wait for any investigation by law enforcement" and reiterating his request for an investigation by the School District. In February 2025, Mayes sent a respond letter. It was curt, insensitive, and dismissive. It avoided confirming or denying that Davis was employed by the School District and stated that the School District would not investigate Kimberlin's reports of abuse. *Id.* ¶ 10. Kimberlin's reply stated, among other things, that Mayes was engaging in "a coverup" of Davis's misconduct. *Id.* ¶ 11. Kimberlin then found his Westlane yearbooks, which contained Davis's photo and full name and confirmed that Davis was a teacher at Westlane in 1968. Kimberlin sent a photo of the relevant yearbook pages, along with another letter, to Mayes. *Id.* ¶¶ 12–14.

**B.    Procedural History**

Kimberlin initiated this action on May 7, 2025, by filing a Complaint in the District of Maryland (where Kimberlin now lives), asserting claims under Title IX and 42 U.S.C. § 1983

("Section 1983") against the School District, School Board, and Dr. Woodson (Dkt. 1). The case was soon transferred to this Court over Kimberlin's objection (Dkt. 4; Dkt. 5).

In the Entry of June 5, 2025, the Complaint was screened pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court dismissed Kimberlin's Title IX claims against Dr. Woodson in her official and individual capacities, as well as his Section 1983 claims against Dr. Woodson in her official capacity (Dkt. 13 at 5). Kimberlin's claims against the School District and School Board, and his Section 1983 claims against Dr. Woodson in her individual capacity, proceeded. *Id.* The Court's Screening Entry also explained that pursuant to Federal Rule of Civil Procedure 4(m), Kimberlin was responsible for serving Defendants with the Complaint and Summonses within 90 days of the Complaint (August 5, 2025). *Id.* at 6.

On July 23, 2025, Kimberlin filed proposed summonses for the School District and School Board, but not Dr. Woodson (Dkt. 14). Kimberlin filed a proof of service on July 21, 2025 (Dkt. 16), and on July 24, 2025, Mayes filed a general Appearance for all three Defendants (Dkt. 18). On August 25, 2025, Mayes contemporaneously filed an "Amended, Limited Appearance" for Dr. Woodson and the instant Motion to Dismiss, which seeks dismissal of the claims against the School District and School Board for failure to state a claim, and dismissal of the claims against Dr. Woodson for insufficient service of process (Dkt. 19; Dkt. 20).

On September 26, 2025, Kimberlin filed a Motion to Disqualify and Motion to Order ADR (Dkt. 22; Dkt. 23). Kimberlin also moved for an extension of time to respond to the Motion to Dismiss, which was granted (Dkt. 24; Dkt. 26).

On the morning of October 6, 2025, Kimberlin filed his response to the Motion to Dismiss, along with a Motion to Allow Alternative Service (Dkt. 28; Dkt. 29). In both documents, Kimberlin explains that Dr. Woodson announced her retirement as Superintendent two weeks before the

Court's Screening Entry, and Kimberlin could not confirm her personal address for purposes of service (Dkt. 28 at 9; Dkt. 29 at 2). Kimberlin states that he assumed defense counsel gave notice of the lawsuit to Dr. Woodson, and reports that defense counsel has not been responsive to correspondence about service of process (Dkt. 29 at 2). Hours later, Mayes emailed Kimberlin that he was authorized to accept service on Dr. Woodson's behalf "reserving all rights and defenses." (Dkt. 32). Kimberlin filed a notice of service on Dr. Woodson on October 14, 2025, although no summons to Dr. Woodson had yet been issued.

On October 16, 2025, Defendants filed their reply in support of their Motion to Dismiss, arguing in part that Kimberlin had not cured his failure to timely serve Dr. Woodson (Dkt. 33 at 9). Kimberlin filed a proposed summons to Dr. Woodson on November 10, 2025, the summons was issued on November 19, 2025, and service was effectuated on November 25, 2025 (Dkt. 34-1; Dkt. 35; Dkt. 36). In late December 2025, Kimberlin filed the Motion to Rule on Motion to Order ADR (Dkt. 37).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above

the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.**    **Motion to Dismiss under Rule 4(m) and Rule 12(b)(5)**

Federal Rule of Civil Procedure 4(m) requires that the plaintiff's service of process occur within 90 days of the filing date of the complaint. When service exceeds 90 days, a motion to dismiss may be brought under Rule 12(b)(5), which asks whether sufficient service of process has been provided by the plaintiff to the defendant. Fed. R. Civ. P. 12(b)(5). When proper service is not accomplished within 90 days of filing, Rule 4 instructs the court to "dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff "shows good cause for the failure," whereby the court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

If good cause is not found, two options remain for the court: (1) dismiss the action without prejudice, or (2) decide that a permissive extension is appropriate, as permitted in its discretion, and order that service be made within a specified time. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) (citing *Henderson v. United States*, 517 U.S. 654, 662–63 (1996)). The Seventh Circuit explains that application of Rule 4(m) in the second manner is best determined by

considering the "arguments and factors advanced by the plaintiff, and . . . pay[ing] particular attention to a critical factor such as the running of a statute of limitations." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1007 (7th Cir. 2011) (citing *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996)) (additional citations omitted). A court may also consider other relevant factors, including the "prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). Ultimately, the court retains discretion to allow an extension as long as it "properly sets out the relevant law and makes no factual findings that are clearly erroneous." *Cardenas*, 646 F.3d at 1007.

## III.    DISCUSSION

The Court resolves Defendants' Motion to Dismiss and Kimberlin's motions in turn.

### A.    Defendants' Motion to Dismiss (Dkt. 20)

Kimberlin asserts three claims based on Defendants' failure to investigate his reports of sexual abuse: (I) violation of Title IX; (II) violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; and (III) violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 (Dkt. 1 at 11–17). Defendants argue that the claims against the School District and School Board fail to state a claim for a variety of reasons. The Court need not address all of these reasons[2] because some are dispositive. Defendants lastly argue that the claims against Dr. Woodson must be dismissed under Rules 4(m) and 12(b)(5).

#### 1.    Title IX Claims

Kimberlin claims the Defendants violated Title IX by failing to investigate his 2024 and 2025 reports of sexual assault, and Defendants acted with deliberate indifference in doing so.

---

[2] The Court declines to address Defendants' argument that the Board is not proper defendant (Dkt. 21 at 1 n.1). That argument, raised briefly in a footnote, is perfunctory and undeveloped, and in any event, other issues are more clearly dispositive. *See Rokita v. Bd. of Sch. Comm'rs for City of Indianapolis*, 262 N.E.3d 873, 887 (Ind. Ct. App. 2025) ("We observe, however, that the General Assembly specifically granted *the Board* the authority to enter into contracts and to lease or sell real property . . . at least as far back as 2005." (citing Ind. Code § 20-26-5-4) (emphasis added)).

Defendants argue that Kimberlin's Title IX claims against the School District must fail because, among other reasons, he was not an individual participating or attempting to participate in School programs or activities in 2024 or 2025. The Court agrees.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Kimberlin bases his Title IX claims on Defendants' failure to investigate his 2024 and 2025 reports of sexual assault, but when Kimberlin made those reports and requested those investigations, he was not participating in or attempting to participate in any School programs. The School District's actions or inactions therefore could not have interfered with Kimberlin's participation in those programs. Compare E.C. v. Cmty. Sch. Corp. of E. Hancock Cnty., No. 19-cv-3563, 2023 WL 5872522, at *6 (S.D. Ind. Sept. 11, 2023) ("E.C. did not participate—or attempt to participate—in any educational program or activity offered by NPHS or Southern Hancock. Therefore, no action or inaction attributable to Southern Hancock could have interfered with E.C.'s access to any of Southern Hancock's educational programs or activities. That places E.C.'s claim against Southern Hancock beyond the scope of Title IX in this case.") to Arana v. Bd. of Regents of Univ. of Wis. Sys., 142 F.4th 992, 1003–04 (7th Cir. 2025), vacated for rehearing en banc, No. 22-2454, 2025 WL 2726022 (7th Cir. 2025) (explaining that the readmission of plaintiff's assailant to school allegedly affected plaintiff's education and participation in school activities).

In his response, Kimberlin focuses on the fact that he was participating in School programs at the time of the assault, and argues that the statute of limitations does not bar his Title IX claims (Dkt. 28 at 6–8). Kimberlin relies on Snyder-Hill v. Ohio State University, 48 F.4th 686 (6th Cir. 2022), in which the Sixth Circuit held that former students' Title IX claims were not time-barred

despite being brought several years after their sexual abuse by university medical staff under the guise of performing medical examinations. *Snyder-Hill* is not applicable here.

In *Snyder-Hill*, the plaintiffs sued their alma mater for failing to prevent ongoing abuse by staff, despite having knowledge of the abuse at the time it was happening. *Id.* at 692. The Sixth Circuit explained that even though the abuse happened years before the lawsuit, the plaintiffs did not know that the staff member's conduct was abuse or that the university had knowledge of the abuse until the abuse allegations were made public many years later. The court therefore applied the "discovery rule" in finding that plaintiffs' Title IX claims did not accrue until the plaintiffs first learned about the university's knowledge and failure to act on that knowledge. *Id.* at 694, 704–05.

In contrast, Kimberlin does not allege that the School District knew about or failed to investigate Davis's abuse *while Kimberlin was a student*. Instead, Kimberlin expressly claims that the School District violated Title IX by failing to investigate in 2024 and 2025, when Kimberlin was no longer a student (*see* Dkt. 28 at 12 –13 ("[H]is Title IX (and Constitutional) claims occurred in 2024-2025 when the Defendants refused to investigate and actively cover up the fact that [the School District] even employed Tharrell Davis."); Dkt. 1 ¶ 38 ("Defendants . . . had actual knowledge that Plaintiff experienced sexual assaults and harassment by . . . Davis because Plaintiff, on June 27, 2024, provided a detailed letter of said abuse.")). The fact that the School District has an alleged history of ignoring sexual assault complaints does not show that the School District knew of, or acted with deliberate indifference by failing to investigate, Davis's abuse at the time. Stated differently, because Defendants' alleged failure to investigate (separate from the underlying abuse) occurred when Kimberlin was no longer participating in the School District's programs, he cannot obtain relief under Title IX. His Title IX claims against the School District and School Board are **dismissed** for failure to state a claim.

### 2. **Fourteenth Amendment Claims**

Kimberlin also alleges Defendants violated his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment in 2024 and 2025 by failing to investigate Davis's abuse and by ignoring Kimberlin's complaints. Defendants argue these claims must be dismissed against the School District and School Board for several reasons, including that Kimberlin has no cognizable constitutional right to an investigation into Davis's prior conduct. The Court again agrees with Defendants.

The Fourteenth Amendment Due Process Clause provides: "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Equal Protection Clause states: "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Id.* Section 1983 allows an individual to bring a claim against a person acting under the color of state law for a violation of a constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999); *see, e.g.*, *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1002 (7th Cir. 2008) ("Intrusion upon a cognizable property interest is a threshold prerequisite to a substantive due process claim . . . . In other words, no abstract right to substantive due process exists under the Constitution." (citation modified)); *Doherty v. City of Chi.*, 75 F.3d 318, 321 (7th Cir. 1996) ("The first step requires us to determine whether the plaintiff has been deprived of a protected interest . . . .").

Kimberlin alleges that he was deprived of an investigation in 2024 and 2025 into Davis's assaults in 1968. For the reasons explained above, Kimberlin did not have a right to any such investigation under Title IX, and he has no constitutional right to any such investigation. *Cf. Bolden v. City of Chi.*, 293 F. Supp. 3d 772, 780 (N.D. Ill. Dec. 12, 2017) (dismissing due process claim

based on police officers' failure to investigate plaintiff's alibi; "[T]he Seventh Circuit . . . has not held that a failure [by police] to investigate, in and of itself, constitutes a due process violation."); *McCray v. Alejandro R.*, No. 20-cv-3006, 2021 WL 3418812, at \*3 (S.D. Ind. Aug. 4, 2021) ("As we previously explained, the Defendants' inaction, that is, their failure to investigate, is not enough to establish their liability for any constitutional violations."). Because the Complaint does not identify a protected constitutional right of which Kimberlin was deprived, Kimberlin's Fourteenth Amendment claims against the School District and School Board must be **dismissed** for failure to state a claim.

### 3. <u>Claims Against Dr. Woodson</u>

Defendants lastly move for dismissal of Kimberlin's claims against Dr. Woodson under Rules 4(m) and 12(b)(5) because Kimberlin did not serve Dr. Woodson within 90 days of his Complaint (Dkt. 21). In response, Kimberlin argues that dismissal is not proper because he was unable to confirm Dr. Woodson's address, because Dr. Woodson had notice of the lawsuit, and because Mayes "should have accepted or waived service, or notified Plaintiff of how and where to serve her." (Dkt. 29 at 9–10). Defendants recognize on reply that Mayes has since been authorized to accept service for Dr. Woodson, but they argue that Kimberlin still failed to timely effectuate service (Dkt. 33 at 9). Defendants also contend that there is no good cause for extending the time for service because Kimberlin "does not explain why he did not, or could not, take steps between the June 5 Order and the August 5 deadline to effectuate service." *Id.*

The Court finds that Kimberlin has shown good cause for extending the service deadline to November 25, 2025, which is the date Dr. Woodson was served. As Kimberlin explains, Dr. Woodson coincidentally announced her retirement just two weeks before the Court screened the Complaint. Because Dr. Woodson could no longer be served at the School District's address, Kimberlin needed to know her personal address, which he could not confirm. In most cases, a

plaintiff's failure to find a defendant's address might not constitute good cause, but under the unusual facts of this case, the Court finds that it does.

Moreover, even absent good cause, a permissive extension of the service deadline is appropriate. *Ligas*, 549 F.3d at 501. One critical factor here is the statute of limitations. *Cardenas*, 646 F.3d at 1007. If the Court dismissed the claims against Dr. Woodson now, then Kimberlin would have only a few months to refile his claims before the statute of limitations would run on his Section 1983 claims arising from his June 2024 Letter. The Court also considers "prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Troxell*, 160 F.3d at 383. Defendants identify no prejudice that Dr. Woodson would suffer if service were deemed timely. It is also clear from the record that Dr. Woodson received actual notice of this lawsuit early in the proceedings—Mayes filed a general Appearance on her behalf in July 2025, and only filed an "amended" limited appearance on August 25, 2025, after the service deadline had passed. "Eventual service" is also certain, as Dr. Woodson was served in November 2025.

The Court therefore **denies** the Motion to Dismiss the claims against Dr. Woodson under Rules 4(m) and 12(b)(5). The Court, finding good cause and in its discretion, **extends** the deadline to serve Dr. Woodson to November 25, 2025, and **deems** service on Dr. Woodson to be timely.

## B.  **Kimberlin's Motions**

### 1.  **Motion to Disqualify Under Rule 3.7 (Dkt. 22)**

Kimberlin moves to disqualify defense counsel, Mayes, under Indiana Rule of Professional Conduct 3.7. Rule 3.7 provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Ind. R. Prof'l Conduct 3.7. Kimberlin alleges that Mayes participated in the "coverup" of his sexual abuse by ignoring his reports of sexual assault, so Mayes will be "a witness in this case." (Dkt. 22 at 1–2). Defendants respond that Kimberlin's allegations "do not hold water," so Mayes will not be a witness and should not be disqualified (Dkt. 27 at 3).

The Court need not presently decide whether Mayes must be disqualified because Kimberlin's request is premature. Rule 3.7 permits the disqualification of an attorney "as advocate at a trial." This case is still at the pleadings stage. It is unclear whether this case will proceed to trial, or, if it does, whether discovery will uncover facts bearing on Mayes' ability to participate as an advocate at trial. The Court therefore **denies** the Motion to Disqualify **as premature**.

That said, if Kimberlin decides to later move for disqualification, closer to trial, he should keep in mind that he will bear a significant burden. "Disqualification of an attorney is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Mills v. Hausmann-McNally, S.C.*, 992 F. Supp. 2d 885, 890 (S.D. Ind. 2014) (quoting *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993)). Motions to disqualify are thus treated with "extreme caution." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). And because of their susceptibility to abuse as tactical devices, courts treat motions under Rule 3.7 with skepticism. *See Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998).

## 2.   Motion to Order ADR and Motion to Rule on ADR Motion (Dkt. 23; Dkt. 37)

In September 2025, Kimberlin filed a Motion to Order ADR. He states that defense counsel has ignored his requests to discuss ADR, and the Court should order the parties to confer. While

the Motion to Order ADR was still pending, Kimberlin filed his Motion to Rule on ADR Motion (Dkt. 37). In his Motion to Rule, Kimberlin notes that Defendants failed to timely respond to his Motion for ADR, and he again asks the Court to grant the Motion to Order ADR (Dkt. 37). Defendants then filed a combined response to the Motion to Order ADR and Motion to Rule, arguing that ADR would be premature (Dkt. 38).

As a general matter, it is never too early for parties to participate in ADR, and parties are always encouraged to try to resolve their disputes without Court involvement. However, the Court agrees with Defendants that at this stage, it would be premature for the Court to *order* the parties to confer about ADR. The Court will discuss settlement and other ADR options with the parties as this case progresses. Kimberlin's Motion to Rule is therefore **granted** only to the extent that the Court now **denies as premature** his Motion to Order ADR.

### 3.  Motion to Allow Alternative Service (Dkt. 29)

On October 6, 2025, Kimberlin filed a Motion to Allow Alternative Service on Dr. Woodson (Dkt. 29). Because Dr. Woodson has since been served, the Motion is **denied as moot**.

### IV.  CONCLUSION

For the reasons explained above, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss (Dkt. 20); **DENIES as premature** Kimberlin's Motion to Disqualify (Dkt. 22); **GRANTS** the Motion to Rule (Dkt. 37) to the extent that the Court now **DENIES as premature** the Motion to Order ADR (Dkt. 23); and **DENIES as moot** the Motion to Allow Alternative Service on Dr. Woodson (Dkt. 29).

Defendants' Motion to Dismiss is **granted** as to Kimberlin's claims against the School District and School Board, which are **dismissed without prejudice**,[3] and **denied** as to Kimberlin's claims against Dr. Woodson. Kimberlin is granted leave of **fourteen (14) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If nothing is filed by that date, the Court will direct the clerk to remove the School District and School Board as defendants in this case, and the claims against the School District and School Board will be converted to a dismissal with prejudice. This matter will then proceed only as to Kimberlin's Section 1983 claims against Dr. Woodson in her individual capacity,.

If an amended complaint is filed, then all Defendants shall have **fourteen (14) days** from the date of the amended complaint to file their response. If no amended complaint is filed, then Dr. Woodson must respond to the original Complaint within **fourteen (14) days** from the date an amended complaint was due.

     **SO ORDERED**.

   Date:   3/13/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

BRETT KIMBERLIN
8100 Beech Tree Road
Bethesda, MD 20817

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jmayes@boselaw.com

---

[3] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).