UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRETT KIMBERLIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:25-CV-01047-TWP-MJD |
| | ) | |
| DR. NIKKI WOODSON Superintendent, in her individual capacity, | ) ) | |
| | ) | |
| Defendant. | ) | |

### Brief in Support of Defendant's Motion to Dismiss[1]

Just as the Court dismissed claims against the School District and Board, dismissal of the claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983 for alleged violations of the U.S. Constitution against Dr. Woodson in her individual capacity now is proper.

***First***, as to the Title IX claims, this Court explained, "The Seventh Circuit has held that Title IX actions may only be brought against an educational institution, not against individuals." *Thompson v. Trs. of Indiana Univ.*, No. 1:23-CV-02094-TWP-MKK, 2024 WL 4289642, at *5 (S.D. Ind. Sept. 24, 2024) (Pratt, C.J.)(citing *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997). But that prohibition notwithstanding, Kimberlin's claims fail at a more fundamental level because he "does not allege that the School District knew about or failed to

---

[1] On May 7, 2025, Plaintiff Brett Kimberlin filed claims against Defendants Metropolitan School District of Washington Township ("School District"), the Board of Metropolitan School District of Washington Township ("Board"), and then-Superintendent Dr. Nikki Woodson in her individual and official capacities. (Dkt. 1.) The Defendants moved for dismissal (Dkts. 20, 21, 33), which the Court granted as to the School District and the Board initially without prejudice, affording Kimberlin an opportunity to amend his Complaint. (Dkt. 41 at 15.) With the time to amend expired, dismissal of the School District and Board are now with prejudice. *Id.* And the Court instructed, "This matter will then proceed only as to Kimberlin's Section 1983 claims against Dr. Woodson in her individual capacity."

investigate Davis's abuse *while Kimberlin was a student*." (Order, Dkt. 41 at 9) (emphasis by the Court). As the Court explained, because Kimberlin alleges that the "alleged failure to investigate (separate from the underlying abuse) occurred when Kimberlin was no longer participating in the School District's programs, he cannot obtain relief under Title IX." *Id.* For these reasons, the Court must also dismiss Title IX claims against Dr. Woodson.

*Second*, Kimberlin's constitutional claims alleging violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment by Dr. Woodson in 2024 and 2025 for allegedly failing to investigate Kimberlin's complaints likewise must be dismissed. As the Court held, "For the reasons explained above, Kimberlin did not have a right to any such investigation under Title IX, and he has no constitutional right to any such investigation." (Dkt. 41 at 10) (collecting cases). Just as the Court dismissed the claims against the School District and Board, so, too, must the same claims against Dr. Woodson be dismissed.

*Third,* Dr. Woodson is entitled to qualified immunity. There is no underlying constitutional violation or clearly established precedent making it "beyond debate" that Dr. Woodson's alleged action violated the U.S. Constitution.

*Finally,* to the extent Kimberlin seeks review of the nearly 60-year-old allegations, those are time-barred.

For these reasons, Kimberlin's Complaint against Dr. Woodson must be dismissed with pursuant to Federal Rule of Civil Procedure 12(b)(6).

### COMPLAINT ALLEGATIONS

#### A.    Parties and Procedural Posture

Although Kimberlin resided in Indiana until 1978, he has had no connection to the District—academic, professional, or otherwise—for more than fifty years. (ECF 1 ¶¶ 1, 18.) He

filed this action on May 7, 2025, in the District of Maryland where he is a longtime resident. The case was transferred to this Court on May 30, 2025. (ECF 5, 6.)

### B.    Timeline of Allegations

According to the Complaint, Kimberlin alleges that in 1968 he was sexually assaulted by someone who was not his teacher but employed with the School District. (ECF 1 ¶ 2.) Kimberlin has not had affiliation with the School District since 1978, *id.* ¶ 1, and resides in Maryland without any alleged intent to be involved in a School District program. *Id.* ¶ 1. Kimberlin claims he became aware of the alleged abuse in December 2023—over fifty years later—when his mother disclosed information that, he alleges, triggered repressed memories. (*Id.* ¶ 6.)

In June 2024, Kimberlin submitted a Title IX complaint to the School District and requested that it open an internal investigation into the decades-old allegations. (*Id.* ¶ 7.) At the time of his request, he was not enrolled in, employed by, or otherwise participating in any educational program or activity operated by the School District. *See generally,* ECF 1. The School District reviewed the complaint and, consistent with its policies and applicable guidance, referred the matter to the Indiana State Police and the Indianapolis Metropolitan Police Department. (*Id.* ¶ 8.)

Kimberlin objected to this response and demanded that the School District conduct its own Title IX investigation. (*Id.* ¶ 9.) In response, the School District explained that the matter had already been referred to law enforcement, no charges were filed, and a new investigation was not required or feasible given the absence of witnesses, records, or involvement by current personnel. (*Id.* ¶ 10.)

### C.    Claims Asserted

Kimberlin alleges that Dr. Woodson's alleged decision in 2024 not to initiate a Title IX investigation violated his constitutional rights. (*Id.* ¶ 35.) He asserts that Dr. Woodson, by failing

to act beyond the law enforcement referral, denied him due process and equal protection under the Fourteenth Amendment. (*Id.*) Kimberlin explicitly clarifies that "[t]he gravamen of the instant Complaint is that Defendants violated Title IX and denied Kimberlin his constitutional rights to due process and equal protection in 2024 and 2025, not in 1968." (ECF 4 ¶ 5.) Kimberlin *see*ks both compensatory and injunctive relief based solely on the alleged conduct in 2024 and 2025. (ECF 1 ¶¶ 73–74.)

## I.    STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), Kimberlin's Complaint "must contain allegations that state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## II.    ARGUMENT

The claims against Dr. Woodson are no different than the claims against the School District and Board, which were dismissed. But Dr. Woodson has additional arguments available to her that

make dismissal more certain. Title IX does not permit claims against individual. Even if it did (it does not), the Title IX claims—just like the School District and Board claims—do not state a claim under Title IX. The same is true for the constitutional claims—because there is no constitutional right implicated or violation alleged (as the Court found relative to the School District and Board), the constitutional claims are dead. But even more, qualified immunity raises the bar for Kimberlin, reinforcing Dr. Woodson's dismissal arguments. In the end, there is no allegation the incidents occurred within School District programs or activities or violated constitutional principles. Accordingly, dismissal is warranted under Rule 12(b)(6).

### A. Kimberlin's Title IX claims against Dr. Woodson are not cognizable.

Two reasons justify dismissal of Kimberlin's Title IX claims against Dr. Woodson: (1) Title IX claims cannot be asserted against individuals (no matter the capacity) and (2) Kimberlin's alleged "failure to investigate" claims identify no violation of Title IX.

Title IX instructs that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Smith*, 128 F.3d at 1018 (quoting 20 U.S.C. § 1681(a)). "By its terms, Title IX prohibits discrimination only by a 'program or activity' receiving federal funding." *Id.* "Accordingly, in *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 884, 901 (1st Cir.1988), the First Circuit concluded that a claim could not be established under Title IX against a supervisory official, either individually or officially, since in implying a cause of action under Title IX, the Supreme Court has considered only actions against the educational institution itself." *Id.* (cleaned up) (collecting cases). "The majority of courts considering this issue also has concluded that only a grant recipient can violate Title IX." *Id.* at 1018-19 (collecting cases). Accordingly, the Seventh Circuit reversed the District Court and dismissed the Title IX claims against individuals in their individual and official capacities. *Smith*,

128 F.3d at 1019, 1021.  Citing *Smith*, this Court subsequently recognized that "[t]he Seventh Circuit has held that Title IX actions may only be brought against an educational institution, not against individuals." *Thompson*, 2024 WL 4289642 at *5. And so, Kimberlin's Title IX claims against Dr. Woodson, who is not a "program or activity" or "grant recipient" must be dismissed.

Putting aside for argument whether claims can be made, Kimberlin's claims cannot stand as alleged. Kimberlin alleges that Dr. Woodson did not, in 2024 or 2025, internally investigate the 2024 complaint and only referred the case to law enforcement. (ECF 4 ¶ 5.) But this does not violate Title IX because its implementing regulations expressly limit any investigation obligations to individuals "participating, or at least attempting to participate" in programs or activities— neither of which define Kimberlin in 2024 or 2025. 34 C.F.R. § 106.44(a) (2020)[2]; *Doe v. Brown University*, 896 F.3d 127 (1st Cir. 2018); *See E.C. v. Cmty. Sch. Corp. of E. Hancock Cnty.*, No. 1:19-cv-03563-JPH-CSW, 2023 WL 5872522, at *5 (S.D. Ind. Sept. 11, 2023) (adopting *Brown* and concluding that Title IX liability requires the plaintiff to have been participating or attempting to participate in the defendant institution's education programs or activities). Kimberlin does not allege that he was enrolled, employed, or otherwise participating in (or attempting to participate in) School District functions at the time he tendered his complaint in 2024. As courts have recognized, where this threshold is not met, no Title IX duty is triggered. *See Brown*, 896 F.3d at 131. And, to boot, Kimberlin never alleges anything happened within the School District program (he only alleges incidents at a former teacher's home (ECF 1 ¶ 2)) as required to establish a claim under Title IX. *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 541 (7th Cir. 2022) (*en banc*) (the recognized "prerequisites for institutional liability under Title IX" begin with "an official of the

---

[2] The 2024 Final Rule has been enjoined and does not apply. *See Texas v. Cardona*, 743 F.Supp. 3d 824, slip op. at 2–3 (N.D. Tex. June 17, 2024) (preliminarily enjoining enforcement of the 2024 Final Rule nationwide).

recipient entity with authority to take corrective action to end the discrimination must have actual knowledge of discrimination in the recipient's programs").

For these reasons, the Title IX claims against Dr. Woodson must be dismissed.[3]

**B. Kimberlin's various constitutional claims against Dr. Woodson also do not state cognizable claims and warrant dismissal.**

Kimberlin's three forms of constitutional claims under the Fourteenth Amendment—procedural due process, substantive due process, and equal protection—each fail as a matter of law. The Complaint identifies no constitutionally protected interest, no arbitrary or conscience-shocking conduct, and no discriminatory classification or intent. The School District's (and Dr. Woodson's) response—accepting the complaint and referring it to law enforcement—was lawful, appropriate, and constitutionally sufficient. Kimberlin's dissatisfaction with that response does not give rise to a federal cause of action.

**1. The procedural due process claim fails because Kimberlin identifies no protected property or liberty interest, and, even if one existed, the School District afforded all process due.**

A procedural due process claim requires the deprivation of a constitutionally protected liberty or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Complaint identifies none. Kimberlin was not a student, employee, or participant in any School District program in 2024 and thus lacked any ongoing relationship that could form the basis of a protected interest. He asserts only a desire for the School District to investigate half-century-old allegations, but courts have held that there is no liberty or property interest in compelling a public body to

---

[3] To the extent Kimberlin invokes terms such as "institutional betrayal" or "secondary victimization" (ECF 1 ¶¶ 26, 59), these are not legally recognized theories of recovery under Title IX. *See* 32 C.F.R. § 103.3 (defining "secondary victimization" as a psychological concept, not a cause of action).

investigate past misconduct. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (there is no constitutional right to an investigation).

In dismissing the identical School District and Board claims, the Court found against Kimberlin on this issue. "Kimberlin alleges that he was deprived of an investigation in 2024 and 2025" but "Kimberlin did not have a right to any such investigation under Title IX, and he has no constitutional right to any such investigation." (Dkt. 41 at 10) (collecting cases). The Complaint does not identify a protected constitutional right of which Kimberlin was deprived," the Court held. *Id.* Consequently, Kimberlin's Due Process claims against Dr. Woodson must be dismissed for failure to state a claim.

> **2. The substantive due-process claim fails because no fundamental right obliges a school to investigate 55-year-old off-campus allegations, and the School District's referral to the Indiana State Police and IMPD does not "shock the conscience".**

To state a substantive due process claim, a plaintiff must satisfy a two-step inquiry. First, the plaintiff must identify a fundamental right, meaning a right that is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Second, the plaintiff must show that the government's conduct either fails heightened scrutiny if the right is fundamental or lacks even a rational relationship to a legitimate government interest if the right is not fundamental. *See Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1264–65 (11th Cir. 2025) (Rosenbaum, R., concurring); *See also Reno v. Flores*, 507 U.S. 292, 302 (1993) (strict scrutiny applies to fundamental rights); *See also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 300 (2022) (rational basis for non-fundamental rights).

Kimberlin's claim fails both steps. First, there is no fundamental constitutional right to compel a school district to investigate half-century-old, off-campus allegations by a non-student.

The Supreme Court has consistently rejected efforts to expand substantive due process into new, unenumerated rights absent clear historical support. *Glucksberg*, 521 U.S. at 720–21; *Dobbs*, 597 U.S. at 237. Kimberlin has not identified any case recognizing such a right. That alone is fatal to his claim. *Littlejohn*, 132 F.4th at 1265 (explaining that unenumerated rights must be firmly grounded in history to trigger substantive due process protection).

Second, even if Kimberlin could identify a constitutionally protected interest (he cannot), the School District's conduct would not violate it. Substantive due process protects only against conduct that is arbitrary in the constitutional sense—*i.e.*, conduct that is so egregious that it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). This is a demanding standard, reserved for conduct that is truly brutal or inhumane. Here, the School District did not ignore Kimberlin. Rather, it acted promptly and responsibly by referring the allegations to the Indiana State Police and the Indianapolis Metropolitan Police Department. (ECF 1 ¶ 8.) That referral was lawful, prudent, and consistent with the School District's limited obligations under Title IX and constitutional law. No further action was required, and the mere decision not to conduct an additional investigation does not remotely approach the "conscience-shocking" threshold. Kimberlin asks this Court to convert a discretionary administrative decision into a constitutional mandate, but that is not the role of substantive due process. Because no fundamental right is at stake and the School District's conduct was rational, this claim must be dismissed as the Court did with identical claims against the School District and Board. (Dkt. 41 at 10-11.)

### 3. The equal-protection claim fails under rational-basis review because the Complaint alleges no discriminatory intent or classification.

The Equal Protection Clause prohibits government actors from treating similarly situated individuals differently without adequate justification. To state a claim, a plaintiff must plausibly allege that (1) he was treated differently from others similarly situated, and (2) the differential

treatment was based on a suspect classification or lacked any rational basis. *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). The Complaint fails to meet either requirement.

Kimberlin does not allege that he was treated differently from any similarly situated person. He identifies no other former student—let alone one separated from the School District for over fifty years—whose allegations of historical, off-campus abuse prompted a different response. Without a comparator, Kimberlin cannot demonstrate disparate treatment. *See Srail*, 588 F.3d at 945 (similarly situated individuals must be directly comparable in all material respects).

Because the Complaint does not allege discrimination based on race, sex, or any other protected classification, rational basis review governs. *Romer v. Evans*, 517 U.S. 620, 631 (1996). The School District's actions easily meet this standard. When faced with allegations dating back to the 1960's involving no current students, staff, or school programs, the School District referred the matter to the Indiana State Police and the Indianapolis Metropolitan Police Department. Needless to say, these agencies, which are equipped to assess such claims, exercised their own independent judgment.

This decision was rationally related to multiple legitimate ends: maintaining administrative efficiency, deferring to law enforcement for criminal investigations, and preserving institutional focus on serving current students. Kimberlin may disagree with the School District's choice, but that does not make it irrational. *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (government conduct survives rational basis unless no conceivable legitimate purpose supports it). It is particularly rational when Title IX itself explicitly limits investigation obligations to those "participating in or attempting to participate in the education program or activity of the recipient." 34 C.F.R. § 106.44(a) (2020); *Doe*, 896 F.3d 127; *E.C.*, 2023 WL 5872522 at \*5.

10

Just as the Court did with respect to the same claims against School District and Board (Dkt. 41 at 10-11), dismissal of the claims against Dr. Woodson is now proper, too.

**4. The individual-capacity claims against Dr. Woodson must be dismissed because no constitutional violation is alleged and qualified immunity bars the claim.**

To establish individual liability under 42 U.S.C. § 1983, a plaintiff must allege a violation of a clearly established constitutional right. Kimberlin's Amended Complaint fails to do so. He asserts that Dr. Woodson violated his constitutional rights by declining to open a School District investigation into alleged abuse from the late 1960s. However, the Complaint does not identify any clearly established duty that would compel a school superintendent in 2024 to investigate 55-year-old, off-campus allegations brought by a non-student. Dr. Woodson instead referred the complaint to law enforcement, which (Kimberlin alleges) investigated and declined further action. (ECF 1, Compl. ¶ 8.) That referral was entirely lawful and reasonable. Because no constitutional violation is alleged, and because no existing precedent placed the lawfulness of Dr. Woodson's actions "beyond debate," qualified immunity shields her from suit.

Qualified immunity protects government officials from liability for civil damages when one of two conditions is satisfied: (1) the official's conduct did not violate clearly established law; or (2) it was objectively reasonable for the official to believe her actions were lawful. *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007). This doctrine shields all but the plainly incompetent or those who knowingly violate the law. *See Sabo v. Erickson*, 128 F.4th 836, 845 (7th Cir. 2025) (en banc).

The burden to defeat qualified immunity rests with the plaintiff. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). To do so, the plaintiff must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff, and (2)

11

that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful. *Id.* Courts may begin and end with the second prong when dispositive. *See Marshall v. Stennis,* No. 1:23-CV-00442-JPH-TAB, 2025 WL 1457010, at *5 (S.D. Ind. May 21, 2025)

The Supreme Court has emphasized that courts must not define clearly established rights "at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). Instead, courts must ask whether the official acted reasonably under the circumstances they faced. *Marshall*, 2025 WL 1457010, at *5 (quoting *Sabo*, 128 F.4th at 844). Dr. Woodson was faced with a complaint in 2024 concerning conduct that occurred off campus over fifty years earlier—decades before Title IX existed and involving no current District students or staff. Kimberlin's theory would force courts to second-guess administrative decisions without any clear legal duty, which is not the purpose of § 1983.

A right is "clearly established" only when "existing precedent must place the constitutional or statutory question beyond debate." *Sabo*, 128 F.4th at 843-44 (cleaned up). It is not enough to assert a general constitutional principle; the plaintiff must identify either (1) a reasonably analogous case that both articulates the right and applies it to a similar factual circumstance, or (2) a violation so obvious that any reasonable official would recognize it. *See Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

Kimberlin has not identified any case that would have placed Dr. Woodson on notice that declining to conduct an internal investigation under these facts would violate federal law. Instead, Woodson followed federal guidance (34 C.F.R. § 106.44(a) (2020)) but also referred the complaint to law enforcement. (Compl. ¶ 8.) *See Marshall*, 2025 WL 1457010, at *5 (emphasizing that qualified immunity shields officials from liability unless precedent clearly places the conduct "beyond debate"). Because there is and was no constitutional obligation to open an investigation,

12

and at a minimum the law was not clearly established in 2024 to say otherwise, Dr. Woodson is entitled to qualified immunity as a matter of law. The individual-capacity claims against her must be dismissed.

### C. All claims predicated on 1960s conduct are time-barred under the two-year limitations period that governs § 1983 and Title IX actions.

Kimberlin's claims trace back to alleged abuse in 1968, placing them far outside the statute of limitations and requiring dismissal. Although Kimberlin states that the "gravamen" of this case is the District's 2024 decision not to initiate an internal investigation (ECF 4 ¶ 5), every claim ultimately arises from conduct that allegedly occurred more than fifty years ago.

Claims brought under 42 U.S.C. § 1983 and Title IX are governed by the forum state's personal injury statute of limitations. *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997). In Indiana, that limitations period is two years. *Id.* Kimberlin alleges that the alleged abuse occurred in 1968 and that he withdrew from the School District shortly thereafter. (ECF 1 ¶¶ 1-2.) Even assuming the limitations period began to run at the age of majority, it expired no later than 1971, and he did not file this suit until May 2025.

Kimberlin attempts to invoke the discovery rule, claiming that he only became aware of the abuse in December 2023 following a conversation with his mother. (ECF 1 ¶ 6.) But the discovery rule has no application to claims against Dr. Woodson. Even if there was a delay in Kimberlin knowing about the alleged violation (and that point is not conceded), it was not a delay in discoverying an alleged violation *by Dr. Woodson*. Simply put, Kimberlin does not allege that Kimberlin she did not deprive Kimberlin of any right (in 1968 or ever) and cannot be held liable vicariously. *Boyd v. Liebel*, No. 122CV00673TWPMPB, 2022 WL 2079072, at *5 (S.D. Ind. June 9, 2022) (Pratt, C.J.) ("[l]iability under § 1983 is direct rather than vicarious") (quoting *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018)). Accordingly, Kimberlin's belief that the

discovery rule tolls the statute of limitations as to Dr. Woodson is incorrect, and dismissal of his claims is proper.

## III.    CONCLUSION

For the reasons stated herein and in papers filed with this Court on behalf of Defendants, Kimberlin's Complaint must be dismissed as to Dr. Nikki Woodson pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/*Jonathan L. Mayes*
Jonathan L. Mayes (#25690-49)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000; (317) 684-5173 Fax
JMayes@boselaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

I further certify that on April 10, 2026, a copy of the foregoing document was mailed by first class mail, postage prepaid and properly addressed to the following parties:

Brett Kimberlin
8100 Beech Tree Road
Bethesda, MD, 20817

/s/*Jonathan L. Mayes*
Jonathan L. Mayes

5241197

14